Filed 7/24/26  P. v. Larsen CA1/3
## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>            Plaintiff and Respondent,<br><br>v.<br><br>JONATHAN ADAM LARSEN,<br><br>            Defendant and Appellant. | A172232<br><br><br>(Mendocino County Super.<br>Ct. No. 24CR03394) |

After the trial court denied Jonathan Adam Larsen's motion to reinstate mental health diversion, he pled no contest and was sentenced. (Pen. Code, § 1001.36, undesignated statutory references are to this code.) On appeal, he argues the court abused its discretion by denying his motion. We affirm.

### BACKGROUND

In 2024, Larsen allegedly took several items — an air mattress, sleeping bag, and tent — from a Walmart store and walked toward the exit without paying.  When confronted by an employee, Larsen threw the air mattress, striking the employee on the cheek and lacerating his face and forearm.  Larsen fled with the tent.  Officers located and arrested him at a nearby bank.

The district attorney filed a complaint alleging Larsen committed second degree robbery (§§ 211, 212.5, subd. (c)) and felony assault likely to

1

produce great bodily injury (§ 245, subd. (a)(4)). After the parties failed to reach a plea agreement, Larsen moved for mental health diversion. (§ 1001.36.) He claimed to have been under the influence of methamphetamine and fentanyl at the time of his offenses. A clinical psychologist diagnosed him with bipolar disorder, exacerbated by a substance use disorder. Larsen further argued there was no evidence adequately rebutting that the disorders were significant factors in the charged crime.

The trial court granted Larsen's motion after finding him eligible and suitable for mental health diversion. It acknowledged his past probation violations but noted the assaultive priors were misdemeanors. It relied on the clinical psychologist's report and observed Larsen had not yet received court-ordered mental health treatment. It ordered diversion for two years, completion of an in-patient program for a minimum of 60 days, and participation in and completion of behavioral health court to connect to services while waiting for a bed at the residential facility.

Approximately one month into diversion, the trial court issued a bench warrant for Larsen's arrest for failure to appear in behavioral health court, and it revoked his diversion subject to a hearing. The prosecutor further moved to revoke diversion after he was arrested for possession of a methamphetamine pipe containing methamphetamine residue and a hypodermic needle. (Health & Saf. Code, § 11364, subd. (a).) The court found that Larsen had violated the terms of his diversion, and it continued the hearing to determine whether to reinstate criminal proceedings.

Larsen moved to reinstate his mental health diversion. He argued that an inpatient treatment bed was unavailable when he initially reported to behavioral health court. And he reasoned that his alleged criminal conduct was directly related to his substance use disorder, which could be addressed

2

appropriately in residential treatment. He noted a residential bed was now available, and his possession of drug paraphernalia while on diversion underscored his need for treatment and struggles with addiction.

The trial court denied the motion for reinstatement. It explained that Larsen failed to appear in court or comply with probation for charges in another county. He also did not comply with orders after diversion was granted and failed to attend mental health appointments, demonstrating a lack of seriousness regarding treatment. Instead, he absconded and was found in possession of narcotics paraphernalia. Thus, the court found he was not amenable for further diversion. It reinstated the criminal charges, and Larsen pled no contest. The court sentenced him to three years in prison with credit for time served.

## DISCUSSION

Larsen contends on appeal that denying reinstatement of mental health diversion was an abuse of discretion because he was both eligible and suitable for diversion. (*People v. Whitmill* (2022) 86 Cal.App.5th 1138, 1147 [mental health diversion decisions reviewed for abuse of discretion].) Having considered whether the trial court's decision was arbitrary or capricious, the result of " 'applying the wrong legal standard,' " or based on " 'express or implied factual findings that are not supported by substantial evidence,' " we find no abuse of discretion. (*Ibid.*)

Mental health diversion provides treatment to people with mental health disorders to prevent their " 'entering and reentering the criminal justice system while protecting public safety.' " (*People v. Hall* (2024) 99 Cal.App.5th 1116, 1122 (*Hall*); § 1001.35.) Pretrial diversion — "postponement of prosecution, either temporarily or permanently, at any point in the judicial process" to allow for mental health treatment — can be

3

" 'viewed as a specialized form of probation' " that " 'is intended to offer a second chance to offenders who are minimally involved in crime and maximally motivated to reform.' " (§ 1001.36, subd. (f); *People v. Qualkinbush* (2022) 79 Cal.App.5th 879, 886.)

A court may grant pretrial diversion if the defendant satisfies eligibility requirements and it determines the defendant is suitable for diversion. (§ 1001.36, subd. (a).) A defendant is eligible when (1) the defendant has been diagnosed with a mental disorder as identified in the most recent edition of the Diagnostic and Statistical Manual of Mental Disorders, and (2) the disorder was a significant factor in the commission of the charged offense. (§ 1001.36, subd. (b)(1)–(2).) When determining suitability for pretrial diversion, the court must consider whether the defendant's symptoms would respond to treatment in the opinion of a qualified mental health expert; the defendant consents to diversion and waives his or her right to a speedy trial; the defendant agrees to comply with treatment as a condition of diversion; and the defendant will not pose an unreasonable risk of danger to public safety if treated in the community. (*Id.*, subd. (c)(1)–(4).) Diversion of felony charges can extend for a maximum of two years. (*Id.*, subd. (f)(1)(C)(i).) If the defendant satisfactorily completes diversion, the court shall dismiss the "criminal charges that were the subject of the criminal proceedings at the time of the initial diversion." (*Id.*, subd. (h).)

But trial courts may also terminate diversion and reinstate criminal proceedings. (§ 1001.36, subd. (g).) Relevant here, if a defendant "is engaged in criminal conduct rendering the defendant unsuitable for diversion," the court must "hold a hearing to determine whether the criminal proceedings should be reinstated, whether the treatment should be modified, or whether the defendant should be conserved." (*Id.*, subd. (g)(3), (g).) Those are the

circumstances here. Thus, Larsen's focus on his initial eligibility and suitability — which led the court to grant him diversion in August 2024 — is misplaced. Rather, the relevant issue is whether the court abused its discretion by reinstating criminal proceedings after determining Larsen "engaged in criminal conduct rendering [him] unsuitable for diversion." (*Id.*, subd. (g)(3).)

We discern no abuse of discretion. First, it is undisputed that Larsen engaged in criminal conduct while on diversion. Officers found him in possession of a methamphetamine pipe containing drug residue and a hypodermic needle. (Health & Saf. Code, § 11364, subd. (a).) Second, the record supports the trial court's finding that he was unsuitable for diversion based on his noncompliance with treatment. (*Hall*, *supra*, 99 Cal.App.5th at p. 1126; § 1001.36, subds. (c)(3), (g)(3).) He absconded from behavioral health court, "requiring the issuance of a bench warrant, and made no apparent effort to seek any further treatment" until he was arrested. (*Hall*, at p. 1126.) His conduct supported the finding that he "no longer agreed to comply with his treatment obligations and had stopped consenting to diversion." (*Ibid*.) His attempt to blame his noncompliance on the lack of bed space at a residential facility is unpersuasive. The court ordered him to attend behavioral health court to connect to services *while waiting* for a bed at the facility. Indeed, the behavioral health court ordered Larsen to report for substance abuse disorder treatment and, two weeks later, he failed to appear at behavioral health court, resulting in a bench warrant.

Relying on *Hall* — where the defendant's criminal conduct included assaulting two program participants and destroying program property — Larsen notes his possession of drug paraphernalia was nonviolent and argues it therefore does not meet the section 1001.36 standard for "criminal conduct

5

rendering the defendant unsuitable for diversion." (§ 1001.36, subd. (g)(3); *Hall*, *supra*, 99 Cal.App.5th at p. 1126.) His reliance on *Hall* is misplaced. Though it determined that "criminal conduct under section 1001.36, subdivision (g)(3) need not include a super-strike offense or the risk of such an offense," it expressly disavowed any attempt to define the type of criminal conduct that could result in reinstatement of criminal charges. (*Hall*, at p. 1126.) Rather, it simply noted that the plain language of section 1001.36 required an examination of "whether such conduct renders the defendant no longer suitable for diversion." (*Hall*, at p. 1125.)

More importantly, the trial court acknowledged that Larsen's possession of drug paraphernalia was not a significant offense but, taking into account the totality of the circumstances — his prior failures to appear; his failure to comply with two separate grants of probation, including a felony probation in another county; the Department of Corrections and Rehabilitation's recommendation against probation; and an active warrant for arrest in Idaho — it concluded he was not amenable to treatment and thus unsuitable for diversion.

Finally, Larsen suggests it was improper for the trial court to find him unsuitable based on his history of noncompliance with probation — facts that predated his initial grant of diversion. We disagree. Certain circumstances may demonstrate that the interests of justice do not support diversion. (*People v. Qualkinbush*, *supra*, 79 Cal.App.5th at pp. 889–890.) For example, the " 'defendant's treatment history may indicate the prospect of successfully completing a program is quite poor. Conduct in prior diversion programs may indicate the defendant is now unsuitable.' " (*Id*., at p. 890.) " 'In short, the court may consider *any* factor relevant to whether the defendant is suitable for diversion.' " (*Ibid*.) Larsen's prior failures to appear while on

6

probation and his probation violations — *coupled* with his possession of drug paraphernalia and lack of compliance with treatment — could support the conclusion that he was not " 'maximally motivated to reform.' " (*Id.*, at p. 886; *Hall*, *supra*, 99 Cal.App.5th at p. 1122 [noting defendant's " 'long history of violence,' " together with postdiversion conduct, in denying request to reinstate mental health diversion].)  Based on this record, we cannot say that the court abused its discretion by reinstating the criminal proceedings. (*People v. Whitmill*, *supra*, 86 Cal.App.5th at p. 1147.)

## DISPOSITION

The judgment is affirmed.

_____

RODRÍGUEZ, J.


WE CONCUR:


_____

TUCHER, P. J.


_____

FUJISAKI, J.


A172232; *People v. Larsen*

8